# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:14-cr-135 |
| | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| SIARRES R. NOBLE, | ) | |
| | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

Before the Court is a motion to vacate, set aside or correct sentence filed by *pro se* petitioner Siarres Noble ("petitioner" or "Noble") pursuant to 28 U.S.C. § 2255 (Doc. No. 49 ["Mot."]).  Respondent United States of America ("respondent" or the "government") opposes the motion (Doc. No. 55 ["Opp'n"]), and petitioner has filed a reply (Doc. No. 57 ["Reply"]).

## I. BACKGROUND

On April 9, 2014, a six count indictment was returned, charging petitioner with the following: two counts (Counts One and Two) of distribution of heroin and four counts (Counts Three through Six) of distribution of fentanyl, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (Doc. No. 1 (Indictment).) Attached to Count Four was a specification, pursuant to 21 U.S.C. § 841(b)(1)(C), that charged that the fentanyl distributed by Noble in Count Four caused the death of another. (*Id*. at 3.)

On July 1, 2014, defense counsel filed an ex-parte motion for a court-appointed expert. (Doc. No. 18). The motion, which was granted by the Court, was directed to the specification in Count Four that petitioner's distribution of fentanyl caused the death of another, and sought

funds to employ an expert in forensic pathology and medicine to rebut the government's evidence. (*See* Minutes 07/07/2014.)

Also on July 1, 2014, a superseding indictment was returned against petitioner. (Doc. No. 19 (Superseding Indictment).) The superseding indictment had the effect of charging an additional count of unlawful distribution of fentanyl and adding a second specification under 21 U.S.C. § 841(b)(1)(C). This new specification provided that petitioner's distribution of fentanyl caused the death of or serious bodily injury to a second individual.

On August 25, 2014, defense counsel filed a motion for independent drug testing, which was granted by the Court on August 29, 2014. (Doc. No. 36; Non-Doc. Order 08/29/2014.) At the final pretrial conference, held on September 2, 2014, defense counsel advised the Court that the results of the independent drug testing would be ready in time for trial. (Minutes from Final Pretrial Conference dated 09/02/2014.) Out of the presence of the government, the Court also discussed with petitioner and his counsel a letter it had received from petitioner expressing certain concerns regarding his counsel's representation. (*See* Doc. No. 37 (letter filed under seal).) At the conclusion of the *in camera* discussion, petitioner assured the Court that he was satisfied with his counsel's representation. (Minutes dated 09/02/2014.)

On September 15, 2014, the government filed its notice of intent to seek an enhanced sentence based upon the § 841(b)(1)(C) specifications attached to Counts Four and Five of the superseding indictment. (Doc. No. 39.)

Petitioner and the government subsequently entered into a Rule 11(c)(1)(C) plea agreement. (Doc. No. 40.) According to the agreement, petitioner agreed to plead guilty to the charges in the superseding indictment in exchange for which the government agreed to recommend to the Court a sentence of 240 months of imprisonment. (*Id*. at 157.) The agreement

2

set forth the parties' understanding that, given petitioner's likely status as a career offender, his Guidelines Calculations would result in a Level 38 and a Criminal History of VI. Petitioner does not dispute that had he not entered into the Rule 11(c)(1)(C) plea agreement, he could have faced a possible guideline range of 360 months of imprisonment to life in prison.

Paragraph 22 of the plea agreement set forth the predicate facts that defendant agreed the government could establish beyond a reasonable doubt at trial. With respect to Counts Four and Five, the agreement provided:

Count 4

On November 8, 2013, in the Northern District of Ohio, Eastern Division, SIARRES R. NOBLE distributed approximately .5 grams of fentanyl to IND-1, who did fatally ingest and overdose on a controlled substance, namely fentanyl, which had been distributed by SIARRES R. NOBLE, aka "Sizzle," to IND-1 (the deceased person). Specifically, Noble sold IND-1 approximately .5 grams of fentanyl while in the area of 213 Brunswick Drive, Elyria, Ohio.

The Defendant further agrees that the government could prove beyond a reasonable doubt that IND-1 did fatally ingest and overdose on fentanyl, on or about November 9, 2013, which had been distributed to IND-1 by the Defendant.

Count 5

On November 8, 2013, in the Northern District of Ohio, Eastern Division, SIARRES R. NOBLE distributed approximately .1 grams of fentanyl to a person whose identity is known to the grand jury (IND-2), who did ingest and overdose on a controlled substance, namely fentanyl, which had been distributed by SIARRES R. NOBLE, aka "Sizzle," to IND-2. Specifically, Noble sold IND-2 approximately .1 grams of fentanyl while in the area of Lorain, Ohio.

The Defendant further agrees that the government could prove beyond a reasonable doubt that IND-2 did ingest and overdose on fentanyl, on or about November 9, 2013, which had been distributed to IND-2 by the Defendant and IND-2 suffered serious bodily injury resulting from the use of the controlled substance.

(Plea Agreement at 161-62.)

The agreement further provided that petitioner was satisfied with the assistance of his

3

counsel, that he had discussed the plea agreement with counsel, and that he was knowingly and voluntarily entering into the agreement. (*Id*. at 163-64.) Petitioner signed the agreement, and initialed each page.

On October 9, 2015, the Court held a change of plea hearing, during which the Court conducted an extensive colloquy with petitioner to ensure that he understood the terms of the Rule 11(c)(1)(C) agreement, the rights he was giving up by changing his plea to guilty, the elements of the charged offenses and specifications, the statutory penalties, and the relevant guideline ranges. The Court explained to petitioner that by changing his plea to guilty and entering into the plea agreement, he was admitting that the government could prove beyond a reasonable doubt the facts contained in paragraph 22 of the plea agreement. Specifically, the following exchange took place:

> The Court: Do you understand that the government believes it can prove all of the facts set forth in paragraph 22 by proof beyond a reasonable doubt should the case proceed to trial?
>
> The Defendant: Yes.
>
> The Court: Have you carefully read and do you understand all the information that is contained in paragraph 22?
>
> The Defendant: Yes.
>
> The Court: Do you have any questions whatsoever regarding the information contained in paragraph 22?
>
> The Defendant: Not at all.
>
> The Court: Do you agree that all the information contained in paragraph 22 is accurate?
>
> The Defendant: Yes.
>
> The Court: Did you engage in the conduct described in paragraph 22?
>
> The Defendant: Yes.

The Court: Did you do so knowingly, voluntarily, and intentionally, sir?

The Defendant: Yes.

The Court: Is there any statement of fact in paragraph 22 with which you disagree?

The Defendant: No.

\*\*\*

The Court: And also, I should say, specifically, that as to Counts 4 and 5, the factual basis provides the basis for enhancement, the penalty enhancement, in this case as to those two counts. Agreed?

\*\*\*

The Defendant: Yes.

The Court: You agree?

The Defendant: Yes.

\*\*\*

The Court: So Mr. Noble, do you acknowledge that the facts contained in paragraph 22 of the plea agreement are facts that the government would be able to establish by proof beyond a reasonable doubt if this case were to proceed to trial?

The Defendant: Yes.

(Doc. No. 53 (Change of Plea Hearing Transcript ["Hearing TR"]) at 337-39.)

After determining that petitioner had sufficient opportunity to discuss the terms of the plea agreement with his counsel; that petitioner understood and agreed with the statements in and the terms of the plea agreement (including the factual basis contained therein); that petitioner was satisfied with his counsel's performance; and that petitioner had entered into the plea agreement knowingly and voluntarily, the Court accepted petitioner's plea of guilty to the offenses charged in the superseding indictment. (*Id*. at 345; *see id*. at 340-41, 343.) On December 17, 2014, and in accordance with the plea agreement, the Court sentenced petitioner to a term of

5

imprisonment of 240 months. (Doc. No. 46 (Judgement); Minutes from 12/17/2014 Sentencing Hearing.)

## II. PETITIONER'S MOTION TO VACATE UNDER § 2255

### A. Standard of Review

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A criminal defendant may not utilize a § 2255 motion as a substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *see Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To assert a claim not raised on direct appeal, a petitioner ordinarily must show cause for the default and prejudice. *See Bousley v. United States*, 523 U.S. 614, 622, 118 S. Ct. 1064, 140 L. Ed. 2d 828 (1998); *United States v. Frady*, 456 U.S. 1584, 1603-04, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1998).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Abrahamson*, 507 U.S. at 637). Therefore, a

court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id.* Subsequently-presented conclusory allegations that fly in the face of the record are subject to summary dismissal. *Id.* (citations omitted).

A court should hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Thus, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255."

(citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

###### B.      Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are analyzed under the familiar *Strickland* standard. Under *Strickland*, in order to succeed on such a claim, a defendant must make two showings. First, he "must show that [his] counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Second, the defendant must also show that counsel's deficient performance prejudiced him. *Id*.

Under the first *Strickland* prong, deficient performance means that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. At this stage of the analysis, the proper measure of attorney performance is an "objective standard of reasonableness," with reasonableness judged based on the particular case's facts, viewed as of the time of the attorney's conduct. *Id*. at 688, 690. Judicial scrutiny of counsel's performance, however, is "highly deferential." *Id*. at 689. Further, a court's focus is on the adequacy of "counsel's actual performance, not counsel's (hindsight) potential for improvement." *Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (citation omitted).

In considering the second *Strickland* prong, petitioner is required to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. However, "[an] error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

8

had no effect on the judgment." *Id*. at 691 (citation omitted). Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

A criminal defendant is entitled to effective assistance of counsel during the plea and sentencing process. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In the context of a guilty plea, an attorney provides ineffective assistance by performing outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). While petitioner does not have to demonstrate that he would have prevailed at trial, a petitioner alleging ineffective assistance of counsel in connection with his guilty plea must establish both deficient performance and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (quotation marks and citations omitted); *see Griffin v. United States*, 330 F.3d 733, 737 n.1 (6th Cir. 2003) (citation omitted).

When reviewing claims of ineffectiveness of counsel, the Court is mindful that its scrutiny of defense counsel's performance is highly deferential. Petitioner's counsel is strongly presumed to have rendered adequate assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Strickland*, 466 U.S. at 689-90 ("strong presumption" that counsel's conduct falls within a wide range of reasonable professional assistance); *see Nix v. Whiteside*, 475 U.S. 157, 165, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986).

C.    **Discussion**

In his motion to vacate his sentence, petitioner states that his "claims of ineffective assistance stem from counsel's advocating [for] guilty pleas to two counts of U.S.C.

9

841(b)(1)(C) despite knowing that the Supreme Court [ ] demanded a higher standard of proof for the enhancement to apply than was present on the record." (Mot. at 278.) He claims that his attorney should not have advised him to enter into the Rule 11(c)(1)(C) plea agreement without "conclusive medical proof" that the fentanyl he allegedly sold the victims resulted in death and/or serious bodily injury, and relies on the Supreme Court's decision in *Burrage v. United States*, --U.S. --, 134 S. Ct. 881, 187 L. Ed. 2d 715 (2014). (*Id*. at 279.)

In *Burrage*, the Supreme Court imposed a new and stricter burden of proof that the government needs to prove in order to establish that death or serious bodily injury "resulted" from drug distribution under 21 U.S.C. § 841(b)(1)(C). Under *Burrage*, the government must meet a "but for" causation test, i.e., that "but for" the drug which a defendant distributed, the overdose victim would not have died or been seriously injured. *Burrage* 134 S. Ct. at 887-92. In so ruling, the Supreme Court rejected a prior appellate court decision finding it sufficient for the government to prove merely that the drug which a defendant distributed "contributed" to an overdose victim's injury or death. *Id*.

Petitioner now argues that the government's evidence could not have satisfied *Burrage's* "but for" causation test. In support, he relies on a September 5, 2014 email to his trial counsel from Jonathan L. Arden, MD, who appears to be a medical professional that defense counsel had consulted to review the medical records produced by the government. In response to a question from counsel, Dr. Arden indicates that "whatever happened the day before [the victim ingested the drugs in question] is unlikely to be related to her death[.]" (Doc. No. 49-4 at 289.) Dr. Arden goes on to note that he had "reviewed [the victim's] documents briefly, and I don't see any indication of other drugs/metabolites in her system, so either the China White [a form of fentanyl petitioner was alleged to have distributed to IND-1] from the prior day was not the heroin that

10

they thought they were buying, or the metabolites were out of her system (or not picked up by the lab) the next day when she died." (*Id.*) While he noted that there was some objective evidence in the medical records suggesting that IND-1 had some other medical problems, he concluded that "absent an autopsy we have insufficient evidence on which to base a conclusion on cause of death to a reasonable medical certainty." (*Id.*) According to petitioner, this email represents "irrefutable" evidence that the government could not have satisfied the *Burrage* but-for causation standard because, without an autopsy, "there was doubt as to the cause of the victim's death." (Mot. at 282.)

There are several problems with petitioner's argument. First, petitioner's argument now that the government could not prove causation beyond a reasonable doubt is directly contradicted by his own assertions in the plea agreement and in open court in the change of plea hearing that the government could prove the facts necessary to support the specification beyond a reasonable doubt.[1] His prior statements to the contrary are presumed to be true and stand as a "formidable barrier" in this collateral proceeding. *Blackledge*, 431 U.S. at 74; *see United States v. Rennick*, 219 F. App'x 486, 489 (6th Cir. 2007) ("The government's factual statement, which Rennick confirmed was correct, gave the district court a sufficient factual basis for entering the plea. Moreover, Rennick's statements to the court carry a strong presumption of truthfulness.") (citing *Blackledge*, 431 U.S. at 74); *see also United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the

---

[1] Thus, unlike the defendant in *Burrage*, petitioner admitted in the guilty plea colloquy that IND-1's death resulted from petitioner's distribution of fentanyl, and similarly that IND-2's overdose and serious bodily injury was caused by the drugs petitioner distributed to him. (Plea Agreement at 161-62; Hearing TR at 337-39.)

11

factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.")

Second, the email does not show what petitioner thinks it does. Dr. Arden stated that he saw no indication that any drugs other than the drugs petitioner was alleged to have distributed were in the victim's system, which is consistent with the coroner's verdict and certificate of death listing the cause of death as "Fentanyl Overdose." (Opp'n at 384, citing Doc. No. 55-2 (Coroner's Verdict) and Doc. No. 55-3 (Certificate of Death).) While he criticized the fact that the coroner had failed to do an autopsy, he conceded that, without such an autopsy, he could not say that something other than the drugs was the cause of death. If anything, the email supports respondent's position that the evidence, if offered at trial, would have proven beyond a reasonable doubt that the drugs petitioner distributed resulted in the death of IND-1. (*Id.* at 383-88.) Specifically relevant to *Burrage's* "but-for" causation requirement, the government detailed the evidence that it would have offered at trial. In addition to the coroner's verdict and certificate of death, the government would have offered the results of certain toxicology tests that showed that IND-1's blood showed only the presence of fentanyl.[2] (*Id.*, citing Doc. No. 55-1 (Toxicology Results).) This evidence, if accepted by a jury, would have been sufficient to establish but-for causation beyond a reasonable doubt.

Of course, even if petitioner's expert witness could have offered a medical opinion that some other event or pre-existing medical condition was responsible for the death of IND-1, a jury would have been free to disregard this testimony entirely or find that, even with this other

---

[2] The government further represented that IND-1's spouse would have testified that "his wife used only [the] drugs purchased from Noble on November 8, 2013, and ingested no <u>other</u> drugs than those acquired from Noble after November 8, 2013." (Opp'n at 385, underlining in original.)

event or condition, "without the incremental effect" of petitioner's drugs, IND-1 would not have died. *See Burrage*, 134 S. Ct. at 888 (citation omitted). Petitioner's position represents a fundamental misunderstanding of *Burrage's* but-for causation requirement.

In *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015), the Sixth Circuit explained that the government was not required to prove that the drugs distributed by the defendant were "the *only* cause of death. On the contrary, but-for causation exists where a particular controlled substance, here, oxycodone—'combines with other factors'—here, *inter alia*, diazepam and alprazolam—to result in death." *Id*. at 395 (quoting *Burrage*, 134 S. Ct. at 888) (emphasis in original). In affirming the defendant's conviction, the Sixth Circuit found that the government "presented sufficient oxycodone-specific evidence for a rational jury to find that, 'without the incremental effect' of the oxycodone, [the victim] would not have died." *Id*. (quoting *Burrage*, 134 S. Ct. at 888). The court further observed that the jury was free to disregard defendant's expert's opinion that the victim's underlying heart condition could have caused her death in favor of the government's contrary evidence. *Id*. at 395-96 (underscoring the fact that "the existence of other potential contributing causes of death is irrelevant so long as the Government presented sufficient evidence that oxycodone was a but-for causation of [the victim's] death." (citing *Burrage*, 134 S. Ct. at 888).

Petitioner also suggests that the fact that his expert was prepared to opine that he could not offer an alternative cause of death without an autopsy precluded the government from establishing IND-1's cause of death "to a medical certainty." (Reply at 411.) Again, this is not the "but-for" causation standard. Instead, when Dr. Arden used the term "medical certainty," he was referring to the degree of certainty a medical expert must have in order to offer an expert

13

opinion; namely, that the opinion is held to a reasonable degree of medical certainty.[3] *See Finn v. Warren Cnty. Ky.*, 768 F.3d 441, 452 (6th Cir. 2014) (noting that "a reasonable degree of medical certainty" is the correct standard for expert witness testimony). Moreover, had petitioner gone to trial and offered Dr. Arden's testimony that the exact cause of death would be impossible to determine without an autopsy, a fact finder would have been free to reject this testimony as well. *See, e.g., United States v. Smith*, Nos. 15-5850 & 15-5851, 2016 WL 3974117, at *2 (6th Cir. July 22, 2016) (affirming conviction, despite expert testimony from defense indicating that the cause of death could not be determined without an autopsy, where the coroner testified that the existence of a toxicology report made an autopsy unnecessary).

Because there is no evidence that defense counsel disregarded controlling case law, or misapplied that law to the facts of this case, petitioner cannot establish either prong of the ineffective assistance of counsel test. Petitioner has, therefore, failed to demonstrate that his counsel was ineffective for counselling him to plead guilty to the specification in Count Four.

Petitioner also insists that trial counsel was ineffective for recommending that he plead guilty to the specification in Count Five because "counsel allowed his client to plead guilty to a constructively amended indictment" (Reply at 416.) In support of this argument, he cites the fact that while Count Five charged defendant with distributing fentanyl, the emergency room report lists IND-2's chief complaint as "heroin overdose." (Doc. No. 49-5 at 291.) He argues that, given

---

[3] Likewise, petitioner is wrong when he suggests that he could not have been convicted of the § 841(b)(1)(C) enhancement without "conclusive medical proof." (Mot. at 279.) While *Burrage* increased the government's burden to requiring proof that the charged drugs were the "but-for" cause of death, it did not elevate the burden of proof from "beyond a reasonable doubt" to something closer to beyond all doubt. *Burrage*, 134 S. Ct. at 887 ("Because the 'death results' enhancement increased the minimum and maximum sentences to which *Burrage* was exposed, it is an element that must be submitted to the jury and found *beyond a reasonable doubt*.") (emphasis in original) (citations omitted).

this evidence, "there is simply no way to prove the enhancement allegation" in Count Five. (Mot. at 284.) Yet, petitioner pleaded guilty in Count 5 to the distribution of fentanyl and, specifically, that the fentanyl he distributed to IND-2 caused a near fatal overdose. Additionally, the government has stated that IND-2 was prepared to testify that he purchased fentanyl from petitioner, that this drug was the only drug he consumed before his overdose, and that the drug he purchased from petitioner was different from the heroin he had previously purchased. (Opp'n at 393-94.) Thus, even if IND-2's chief reason for visiting the emergency room on November 9, 2013 was listed as "heroin overdose," the evidence that would have been offered at trial would have been consistent with the charge in the superseding indictment that the drug causing the overdose was fentanyl.

The government further represents that the evidence, including reports and documents substantiating the specifications in Counts Four and Five, were produced during discovery and made available to defendant and his counsel. Because counsel would have been aware that the government could prove beyond a reasonable doubt that petitioner's distribution of fentanyl was the "but-for" cause of IND-2's overdose and serious injury, his advice to petitioner to enter a plea to take advantage of a below guideline Rule 11(c)(1)(C) sentence was neither deficient nor resulted in prejudice to petitioner. Petitioner's claim that he received ineffective assistance of counsel as to Count Five and its specification also fails.

### D.    Evidentiary Hearing

As set forth above, petitioner's claims are either in direct conflict with the record or do not entitle him to relief even if true. *Arrendondo v. United States*, 178 F.3d at 782; *see also Fontaine v. United States*, 411 U.S. 213, 215, 93 S. Ct. 1461, 36 L. Ed. 2d 169 (1973). Moreover, petitioner's own declarations during the plea colloquy convincingly demonstrate that

15

he is entitled to no relief. *See Fontaine*, 411 U.S. at 215. Accordingly, an evidentiary hearing is not necessary.

**III. CONCLUSION**

For the reasons discussed above, petitioner's motion to vacate, set aside, or correct his sentence is denied and the case is dismissed. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: February 15, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

16