UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:14-cr-135 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| SIARRES NOBLE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On December 17, 2014, defendant Siarres Noble ("Noble" or "defendant") was sentenced to a custody term of 240 months. (Doc. No. 46 (Judgment); *see* Minutes of Proceedings [non-document], 12/17/2014.) Noble is currently serving his sentence at Lee USP and has an anticipated release date of February 12, 2031.[1] Now before the Court is Noble's motion for compassionate release. (Doc. No. 67 (Motion).) Appointed counsel filed a supplement. (Doc. No. 72 (Supplement).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 74 (Response)), and Noble filed a reply. (Doc. No. 76 (Reply).) For the reasons that follow, the motion for compassionate release, as supplemented, is denied.

I.  BACKGROUND

On July 1, 2014, a superseding indictment issued charging Noble with seven counts of distributing controlled substances, including heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). (Doc. No. 19 (Superseding Indictment).) Counts 4 and 5 contained enhancements under 21 U.S.C. § 841(b)(1)(C) for death or serious bodily injury resulting from the

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited December 29, 2025).

sale of a controlled substance. (*Id*. at 3,[2] 4.) In particular, the superseding indictment charged that, on or about November 8, 2013, Noble distributed fentanyl to an individual and that distribution resulted in a fatal overdose. (*Id*. at 3.) The next day (November 9, 2013) Noble distributed fentanyl to another individual and that distribution resulted in another overdose. (*Id*. at 4.) But-for the actions of first responders, who quickly administered a dose of Narcan to the second victim, Noble would have been responsible for a second fatality in as many days. (Doc. No. 54 (Sentencing Hearing Transcript), at 9.)

On September 15, 2014, with the benefit of a Rule 11(c)(1)(C) plea agreement, Noble entered a guilty plea to the charges in the superseding indictment. (Minutes of Proceedings [non-document], 9/15/2014; Doc. No. 40 (Plea Agreement). Prior to sentencing, the Court ordered the preparation of a PSR. (Doc. No. 44 (PSR).) In arriving at an appropriate sentence, the Court first determined the combined adjusted offense level to be 45. (Doc. No. 54, at 4; *see also* Doc. No. 44, at 10 ¶ 54.) After the appropriate adjustments were applied—namely, a 3-level reduction[3] for acceptance of responsibility—the resulting total offense level was 42. (Doc. No. 54, at 4; *see also* Doc. No. 44, at 10 ¶¶ 56–58.) Noble had adult convictions for contributing to the unruliness of a child, unauthorized use of property, and driving under a suspension, as well as multiple convictions for drug trafficking and possession of controlled substances and/or drug paraphernalia, which collectively scored 12 criminal history points. (Doc. No. 54, at 12; *see also* Doc. No. 44, at 11–16, 19 ¶¶ 64, 66–74, 78.) Because Noble committed the present drug trafficking offenses while under

---

[2] All page number references are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[3] In his *pro se* motion, Noble complained that he only received 2 points for acceptance of responsibility. (Doc. No. 67, at 1.) The record clearly reflects, however, that he received 3 points. (*See* Doc. No. 54, at 4.) And, as discussed *supra*, Noble's sentence was dictated by the terms of the parties' agreed Rule 11(c)(1)(C) plea agreement. (*See* Doc. No. 40, at 6 ¶ 15.)

supervision for certain state convictions, 2 "status" points were added, bringing the total criminal history score to 14 and resulting in a criminal history category of VI. (Doc. No. 54, at 5; *see also* Doc. No. 44, at 19 ¶¶ 79–80.) Because Noble was determined to be a career offender, his criminal history category was VI for this additional reason. (Doc. No. 54, at 5; *see also* Doc. No. 44, at 10, 19 ¶¶ 55, 81.) With a criminal history category VI and an offense level of 42, the advisory guideline range was 360 months to life imprisonment. (Doc. No. 54, at 5; *see also* Doc. No. 44, at 23 ¶ 102.) Nevertheless, the Court accepted the parties' negotiated sentence and imposed a custody term of 240 months, which also represented the minimum mandatory sentence for Counts 4 and 5. (Doc. No. 54, at 17, 28; *see also* Doc. No. 44, at 23, ¶¶ 101, 103; Doc. No. 40, at 6 ¶ 15; Doc. No. 46.)

On June 23, 2025, Noble filed the present motion for compassionate release, in which he requests a sentence reduction. In his *pro se* motion, Noble raises many unsupported claims, including that he received an unduly harsh sentence, that he was entrapped, and that he suffers from several serious health conditions for which he believes that the Bureau of Prisons ("BOP") has not provided adequate treatment. (Doc. No. 67, at 1–3.) He also registers various complaints regarding the conditions in his facility (*see id*. at 3), and he underscores his rehabilitation efforts and his desire to care for his mother. (*See id.* at 4–5.)

In the supplement, appointed counsel argues that Noble meets the requirements for a compassionate release because his mother is incapacitated and Noble is the only available caregiver for her. (Doc. No. 72, at 1–3.) Appended to the supplement are various BOP records, letters of support, and a medical discharge record that indicates that his mother suffers from lumbosacral spondylosis without myelopathy and chronic pain syndrome. (Doc. No. 72-1 through Doc. No. 72-6.)

The government believes that the motion should be denied because Noble has failed to

3

establish the existence of extraordinary and compelling reasons under the governing statute and because the sentencing factors at 18 U.S.C. § 3553 do not weigh in favor of early release. (Doc. No. 74, at 1.)

## II. MOTION FOR COMPASSIONATE RELEASE

### A. Governing Law

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute."). Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Noble does not seek relief under Rule 35, nor does he claim that he was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered.[4] Instead, he claims

---

[4] Subsequent to Noble's sentencing, the Federal Sentencing Guidelines were amended to limit the impact of "status points" on a criminal defendant's criminal history score. Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits criminal history "status points" by decreasing them by one point for individuals with seven or more criminal history points and eliminating status points for those with six or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect. *See* U.S.S.G. § 1B1.10(e)(2) (Nov. 1, 2023). Under Part A, Noble's criminal history score is reduced by one to 13, which still corresponds to a criminal history

4

that he is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, U.S.S.G. § 1B1.13, was amended effective November 1, 2023, and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).[5]

---

category of VI. And, in any event, as a career offender, Noble's criminal history category remains a VI. Noble's advisory guideline range, therefore, was not affected by Amendment 821.

[5] To extent that Noble relies on U.S.S.G. § 1B1.13(b)(6)—unusually long sentence—the Court notes that the Sixth Circuit has recently determined that particular subsection to be invalid. *See United States v. Bricker*, 135 F.4th 427, 430 (6th Cir. 2025) (holding that the United States Sentencing Commission exceeded its authority in promulgating § 1B1.13(b)(6)). In any event, Noble would not have been able to meet the requirements of this subsection as it required a qualifying change in the law that resulted in a gross disparity between the sentence imposed and the sentence likely to be imposed at the time the motion was filed. *See* § 1B1.13(b)(6). Because Noble can point to no non-retroactive

5

### B. Exhaustion

Noble maintains, and the government does not dispute, that he has exhausted his administrative remedies. (*See* Doc. No. 72, at 3.) In particular, appended to the supplement is an email from Noble to the warden of his facility, dated August 29, 2025, requesting a compassionate release. (Doc. No. 72-2.) The Court, therefore, finds that Noble has satisfied this mandatory claims-processing rule.

### C. Extraordinary and Compelling Reasons

Even though he has exhausted his administrative remedies, Noble must still demonstrate that he is entitled to relief under the compassionate release statute (18 U.S.C. § 3582(c)(1)(A)) and the relevant BOP policy statement (U.S.S.G. § 1B1.13). The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended.

#### 1. Rehabilitation

In his motion, Noble insists that he is fully rehabilitated and ready to be a "free man" and a "model citizen[.]" (Doc. No. 67, at 3–6.) Further, it appears from the prison documentation appended to his supplement, that he has engaged in prison programming and completed several self-improvement programs. (Doc. No. 72-1 (BOP Records); Doc. No. 72-6 (BOP Certificates of Completion).) While Noble's rehabilitative efforts are commendable, alone they do not amount to an extraordinary and compelling reason for release. *See* U.S.S.G. § 1B1.13(d) (stating that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason"); *United*

---

change in the law that would have yielded a grossly disparate sentence if he were sentenced today, Noble would not have been able to take advantage of this subsection.

*States v. Ruffin*, 978 F.3d 1000, 1004, 1009 (6th Cir. 2020) (stating that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release (quoting 28 U.S.C. § 994(t))); *see also United States v. Jethrow*, No. 4:08-cr-520, 2025 WL 461800, at *5 (N.D. Ohio Feb. 11, 2025) ("[T]hough rehabilitation is to be encouraged and applauded, it is also part of what is expected from all inmates.").

2. *Family Circumstances*

Noble also invokes U.S.S.G. § 1B1.13(b)(3)—family circumstances of the defendant—as a basis for compassionate release. Pertinent to the present motion, § 1B1.13(b)(3)(C) provides that the "incapacitation" of the defendant's parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver for the parent."

Noble has not demonstrated that the situation with his mother, though unfortunate, meets the policy statement's definition of "extraordinary and compelling reasons" for compassionate release. As an initial matter, Noble has not established that his mother is "incapacitated," as required under the policy statement. Noble has provided some documentation that shows that his mother suffers from several serious medical conditions for which she is prescribed medication and is seen monthly by her physician. (*See* Doc. No. 72-4 (Medical Records).) But he offers only his unsupported conclusion that as a result of these conditions, his mother "is, *or will soon be*, incapacitated." (Doc. No. 72, at 3 (emphasis added).)

In his counseled reply, Noble cites an unreported district court decision in support of his position that "it is sufficient for a defendant to allege that their family member is 'on the verge of incapacitation.'" (Doc. No. 76, at 1 (quoting *United States v. May*, 4:22-cv-484-8, 2024 WL 5170002, at *5 (N.D. Ohio Dec. 19, 2024).) The decision is easily distinguished and provides little, if any, persuasive support. In *May*, defendant invoked § 1B1.13(b)(3)(A)—death or incapacitation

7

of the caregiver of a defendant's minor child—as the basis for a finding of an extraordinary and compelling reason. Unlike § 1B1.13(b)(3)(C)—incapacitation of a parent or spouse—upon which Noble relies, § 1B1.13(b)(3)(A) does not even require a showing that there is no other available caregiver. *May*, 2024 WL 5170002, at *3 ("under § 1B1.13(b)(3)(A), a defendant need not show that no available alternative caretakers exist for their child"). Moreover, the defendant in *May* demonstrated that her 21-year old daughter did not have the financial means or the mental, physical, and emotional health to care for defendant's five minor children along with her own three minor children. *Id*. at *5. Additionally, the court found that the fact that the daughter did not have any legal guardianship over defendant's children meant she could not enroll them for school or take them to doctor's appointments, rendering her an especially inappropriate caretaker. *Id*. at *4.

In contrast here, Noble has merely demonstrated that his mother suffers from medical conditions for which she is under a physician's care. There is nothing in the medical records that demonstrates that she is incapacitated, and nothing beyond Noble's unsupported belief to show that his mother "will soon be" incapacitated. The reality is that "[m]any if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019); *see United States v. Villasenor*, No. 21-3477, 2021 WL 5356032, at *1 (6th Cir. Nov. 17, 2021) (recognizing that prisoners often have aging and sick parents and that this fact does not necessarily establish an extraordinary and compelling reason). A parent that merely requires assistance is not "incapacitated" as that term is understood in the policy statement. *United States v. Steel*, No. 1:20-cr-13-4, 2024 WL 1928945, at *3 (S.D. Ohio May 1, 2024) (citing, among authority, *United States v. Jones*, No. 13-cr-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (noting that "incapacitated" refers to "someone who cannot carry on any self-care and is totally confined to a bed or chair")). In short, Noble has

8

failed to demonstrate that his mother suffers from any medical or physical condition that has rendered her incapacitated.

Noble has also failed to demonstrate that, if his mother were incapacitated and required a caregiver, Noble would be the only available caregiver for her. While Noble concedes that he has an uncle who checks on his mother daily, as well as an adult sister who lives in the area, he offers only his unsupported declaration that neither are available to serve as a caregiver.[6] (*See* Doc. No. 72, at 3; Doc. No. 76, at 2–3; *see also* Doc. No. 44, at 21 ¶ 88.) *See, e.g., United States v. Putty*, No. 5:19-cr-2, 2024 WL 3066913, at *3 (W.D. Ky. June 20, 2024) (rejecting unsupported conclusion that defendant was the only available caregiver for his family members (citing *United States v. Stewart*, 86 F.4th 532, 535 (3d Cir. 2023) ("a mere allegation . . .without more" does not establish an "extraordinary and compelling reason for early release"))). Noble also acknowledges that he has an adult sister who lives in Georgia. (Doc. No. 76, at 2; *see also* Doc. No. 44, at 21 ¶ 88.) While he underscores the fact that she lives out-of-state, Noble has not explained why his mother could not move to Georgia where this sister could care for her. In fact, in his *pro se* motion, Noble indicated that, if he was released early, he did not "plan on going back to Ohio [] only to get my mom [and m]ove to Georgia [to] start over enjoy[ing] life." (Doc. No. 67, at 5.) Noble has failed to establish that his family situation, though unfortunate, meets the requirements of § 1B1.13(b)(3). *See, e.g., United States v. Raymore*, No. 1:19-cr-81, 2025 WL 2323560, at *3 (N.D. Ohio Aug. 12, 2025) (denying compassionate release motion where defendant failed "to provide any information regarding his mother's specific health conditions or that would show he is the

---

[6] In his reply, he also suggests, without any support, that this sister "suffers from mental health issues[.]" (Doc. No. 76, at 2.) Again, it was Noble's burden to demonstrate the existence of extraordinary and compelling reasons for early release.

only available caretaker as required under § 1B1.13(b)(3)(C)").

### 3. Other Reasons

None of Noble's other stated reasons, including his unsubstantiated medical conditions, rise to the level of an extraordinary and compelling reason for early release under the statute. *See United States v. Goodwin*, No. 5:21-cr-85, 2023 WL 4711351, at *2 (E.D. Ky. July 24, 2023) (noting that "courts have denied . . . requests for compassionate release on the grounds of medical conditions where the defendant has failed to provide medical records" (quoting *United States v. Gray*, No. 4-cr-580, 2019 WL 4564735, at *3 (N.D. Ohio Sept. 20, 2019) (further citations omitted)). Moreover, Noble's challenges to his underlying conviction and sentence, as well as to the conditions of his confinement, are not properly brought in a compassionate release motion. *See United States v. Harris*, No. 4:21-cr-29, 2025 WL 466447, at *1 (W.D. Ky. Feb. 11, 2025) ("[A] compassionate release proceeding is not the proper vehicle to seek relief for a claimed constitutional violation." (citations omitted)); *United States v. Smith*, No. 3:21-cr-47, 2024, WL 3656187, at *2 n.3 (W.D. Ky. Aug. 5, 2024) (similar) (collecting cases); *United States v. Livesay*, No. 3:18-cr-36, 2023 WL 8101845, at *3 (E.D. Tenn. Nov. 21, 2023) (noting "complaints about prison conditions should be raised in a separate civil suit, not a motion for compassionate release").

### 4. Conclusion

None of the stated reasons for release considered separately or in combination—even when considered in further combination with Noble's rehabilitation—constitute extraordinary and compelling reasons. Because Noble has failed to demonstrate the existence of extraordinary and compelling reasons, his motion for compassionate release must be denied for this reason alone.

**D. Sentencing Factors**

But even if Noble had cleared the initial hurdle of demonstrating the existence of

extraordinary and compelling reasons, the Court would still have denied his motion because the sentencing factors in 18 U.S.C. § 3553(a) do not favor release. The nature and circumstances of the charged offenses were serious. The trafficking of controlled substances is certainly dangerous, as evidenced by the fact that at least two of Noble's drug sales resulted in serious overdoses, one of which was fatal. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir 2010) ("To be sure, drug trafficking is a serious offense, that, in itself, poses a danger to the community." (citations omitted)). Additionally, the convictions in the present case were not Noble's first drug-related convictions. As part of an adult criminal history that spans more than 20 years, Noble has multiple prior convictions in state court for drug trafficking,[7] and prior custody sentences for drug trafficking have failed to discourage him from returning to this dangerous and destructive behavior.[8] (*See* Doc. No. 44, at 13, 15–16 ¶¶ 68, 71, 74.)

In his reply, Noble suggests that his prison programming is more indicative of the person he has become and should receive more consideration than his offense conduct and his lengthy criminal history. (Doc. No. 76 at 3–4.) Prison records, however, show that Noble's early post-conviction conduct included multiple disciplinary infractions, including write-ups for fighting, assault, possessing a dangerous weapon, and destroying property. (Doc. No. 72-1.) These infractions all occurred in 2016 and 2017, and there is no evidence that he has had any serious disciplinary problems since. The Court is pleased to see that Noble now appears to be thriving in

---

[7] At sentencing, the Court observed that "at the age of 30, Mr. Noble has compiled a troubling criminal history which began when he was 16 years old. And possession and distribution of drugs" has been "at the root of his problems." (Doc. No. 54, at 26.) The Court further noted that "[t]his record amassed at such a young age is alarming and suggests to the Court that Mr. Noble's risk of recidivating is great." (*Id*.)

[8] In fact, the government represents that a review of Noble's jail calls revealed that Noble "remained involved in the distribution of narcotics, even while incarcerated." (Doc. No. 74, at 7; *see* Doc. No. 54, at 18 (noting that Noble's comments in jail calls "ran the gamut from 'I'm going to walk straight' to 'I can't wait to get back involved with drugs'").)

a controlled environment where he does not have access to controlled substances. The Court has taken this into consideration, but it remains concerned that when given access to drugs, Noble has repeatedly chosen to engage in trafficking.

The Court has considered Noble's stated release plan, including his uncle's promise to refer him for a position at Ridge Tools (*see* Doc. No. 72-3, at 8), his prison programming, and his willingness to provide support for his mother. But after considering all of the § 3353(a) factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds that defendant continues to pose a danger to the community.

## III. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion, as supplemented, for a compassionate release.

**IT IS SO ORDERED**.

Dated: December 29, 2025

**HONORABLE SARA LIOI
CHIEF JUDGE
UNITED STATES DISTRICT COURT**